Then we have United States v. Morrison. Thank you so much. Mr. Sandek. Yes, good morning. May I proceed? Good morning. May it please the Court, my name is Harry Sandek, I'm at Patterson, Dunlap, Webb & Tyler, and I represent Lafayette Morrison pursuant to an appointment under the CJA. Before trial in this case, the government asked the District Court for permission to offer evidence of the so-called associate search done by the NYPD. The District Court recognized right away that this evidence would reveal that my client and his co-defendant Miller had been arrested 20 years before the charge of offense. The District Court emphatically told the prosecutor no, said if I let that in, it'll be reversed, the conviction would be reversed on appeal, and despite that ruling... Within a week, he said. Within a week, he said. Go ahead. ...despite the ruling, the government twice made reference to the so-called associate search, letting the jury know that Morrison and Miller had been arrested before. But not that there'd been an arrest. I mean, an associate search can turn up all different kinds of information, not necessarily an arrest. I don't see, the judge stopped it at that first question, whether they had conducted an associate search. So I'm not sure what prejudicial material came before the jury. Sure. Let me try to answer that question. Please. So first, Judge Donnelly recognized prior to trial and in the sidebar during trial that the jury would see this evidence as showing a criminal association between Morrison and Miller. She recognized that the jury would take this as a reference to a prior arrest, and that's why she excluded the evidence because... Right, but that would be context. I mean, I think the question for us is, is associate search well-known enough that folks know that it's not just somebody they used to hang out with on the corner, that it's not someone they just went to high school with? And I'd be interested in hearing where you think the jurors would get the information that's in a database and could be associated with someone who's been arrested with them. How does the juror know that that's what an associate search means? Sure. So this is in the middle of a criminal trial. It's testimony from an NYPD detective who worked on the investigation. This is an investigation that began with the belief that Morrison was a victim of the robbery because he worked at the racetrack. And it was only over time through the investigative steps taken by the police that they determined, no, he's not a victim. We think he's a perpetrator. Did the answer to the associate search question yield that there was a positive result for the search? So the detective says, from there, I conducted an associate search for Lafayette Morrison. There was an immediate objection. Right. So the jury didn't know whether that search yielded nothing. Four associates, one associate, they didn't know what the search yielded. Well, this is why the context is important here because the police officer, the detective, is explaining how they came to believe that there was some criminal association between Morrison and Miller. Well, that's why I asked. The question, please. Yes. So the question is, how would a juror of ordinary intelligence, given this context, take that evidence? Does the NYPD keep track of people who are associates in a good way, in a positive way? And if they did, why would the detective be telling the jury about this search at a moment in the trial where he's trying to explain, we flipped our view of being a victim of the crime to being a perpetrator of the crime? And I think the ordinary juror would know that the NYPD does not keep track of associates who are associates in a good way, a law firm associate, like my associate here, or victim associates, which the government suggested improbably. That's not the best evidence, the best inference. But from your brief, which suggested that the problem here was that it revealed an arrest. It didn't reveal an arrest. And are you saying that revealing that there was association with anyone is problematic? No. And in fact, the association- Okay. So the answer doesn't even tell them that they found any associates, but it certainly doesn't tell them that your client had been arrested. And that was what I understood to be your argument, that that's how you were prejudiced. Well, first of all, the district court recognized that a jury would infer a criminal association, that they had been arrested before from this testimony. And secondly, at a part in the trial where the government- Is that exactly right? I mean, I think it was very clear that the district court was concerned about the 2,000 arrests would be a problem. The associate search, you immediately objected- Prior to this. Right? It was immediately objected to, and then the judge stopped it twice. I'm not sure that that is a certainty, that just merely the fact that there was an associate search, as opposed to goes down that road. Right? I mean, isn't that a prophylactic means that the district court judge did to ensure that there wasn't going to be a problem? Well, I think the district court did the best that the district court could possibly do, given the circumstances here. When this arises and they have the sidebar, the court says something like, the witness is going to say, I'm assuming, that he ran them and saw who he was arrested with before, and the government said, agreed with that characterization. So despite the pretrial ruling excluding this category of evidence, the government went right there. The witness was obviously not prepared to stay away from this, because when the sanitized question was asked coming out of the sidebar, the witness said it again. So there's now all this controversy in the jury's eyes. There has been a concession of association. So that's not the issue here. The issue, do these two men know each other? Do they know each other well? That was stipulated by the parties. It was not disputed at all. So the only additive piece here is that when the NYPD concluded, no, he's not some victim, but actually a perpetrator, the criminal association that was evident from this. That's why Judge Donnelly wanted to keep this out. But nothing ever came out that they were associated. Would an ordinary juror, in this context, hearing twice about conducting an associate search as part of the narrative of why we concluded that this was a criminal association between Morrison and Miller, would the ordinary juror draw that inference from the testimony that came in? Okay. So the cat's out of the bag. So now the question in front of us was, it harms, right? That's right. Okay. So let's talk about what else the jury knew. The jury knew that your client was in possession of a burner phone and that that burner phone was continuously in contact with another burner phone that was in the possession of Mr. Miller 45 minutes before the robbery. And in fact, your client's burner phone was pinging with his own personal phone during that period of time also. And there was testimony from the third party involved who testified, right? The accomplice testified. He cut a deal and testified for the government that he had bought the burner phones at your client's direction, Mr. Morrison's direction, and given one to Mr. Miller. And there was further testimony that your client, Mr. Morrison, had specifically instructed Mr. Miller and the accomplice to meet them in a particular location, which was not necessarily open to the public, to interdict Mr. Morrison and the courier, the person who was carrying the, what was it, $285,000 in cash that were the proceeds of that day at Aqueduct and complete the robbery. That seems to tie your client pretty tightly to the crime, Mr. Sandek. Doesn't harmless error seem to be looming on the horizon there for you? You think the jury would say, oh, this is just a coincidence. He bought a burner phone and he gave the burner phone to Miller, who just happened to be on the phone with him for 45 minutes during the upright lady, right up to the time of the robbery. And he did spend time telling us exactly where to meet them to conduct this robbery. That doesn't reflect some kind of common plan or scheme with regard to conducting the robbery of $285,000 at Aqueduct on that particular day of the Gotham races. So your Honor, let me address the evidence at trial in the context of the legal standard here, which is that- And if I've misstated something, please correct me. I found this very, this is an interesting case. Human experience makes this job really kind of enjoyable in many ways. I agree. It's an interesting case and fact pattern. In the context of the standard, can we say it is highly probable the error didn't contribute to the jury's verdict or that there's a sure conviction, those are the standards from Scott and Dinsa? Let me first address the circumstantial evidence relating to the cell phone and then I can address the Williamson testimony. So first of all, a racetrack employee who testified at trial, Randy Scott, contradicted the cell site evidence. He said that he did not hear Morrison being on the phone during the times when the cell site evidence showed that the phone was being used. So the phone and the technology was lying? No, the technology though was far from perfect. The government's witness, someone named Busick, Busick said he can't pinpoint exact locations. Busick said cell phones don't always connect to the closest tower. He even said a tower can switch if a person remains completely still. Most importantly, he cannot tell us, Busick can't, who used which phone or when. There was no forensic evidence taken from the phones, like fingerprints or DNA evidence. So the cell phone evidence is there. Video tape stills, by the way, show that Morrison was not wearing the gray headphones that Williams testified he purchased from Morrison to use. So the cell phone evidence is there, but it is far from perfect and it's not direct evidence of the crime. The direct evidence came from Williams, the cooperating witness. And Williams was a very compromised witness, more compromised, I would suggest, than the ordinary cooperating witness. First, he denies his involvement in the robbery in his initial meetings. That's not uncommon, to be fair with cooperators, an initial kind of exculpatory no. But he went further. He developed a false alibi, lying that he was with his daughter and his daughter's mother. He then admitted going to the racetrack with Miller, but said he didn't do it, but blamed another person for committing the robbery. So we already know in his profits with the government, he has no trouble, even in the government's retelling, falsely implicating people. He denied the record. Did he enter a plea? He did enter into a plea agreement. He initially denied, but he ultimately pled guilty. He ultimately pled guilty once he realized that all of these, all of this dissembling he engaged in wouldn't get him the cooperation agreement that he hoped to get. But this is much worse than the typical cooperating witness who says no initially and then pretty quickly realizes, oh, I'd better come around. He went much further than that. There are also parts of his testimony that don't make any sense. He says that Miller punched him in the face before inviting him to be his co-conspirator in the robbery. He says they couldn't pick the day of the robbery in advance because the more lucrative day is this Gotham race, but those dates are set far in advance. He told agents that he wasn't on certain FaceTime calls between Miller and Morrison, but then at trial, he said he was. He told the authorities they gave more money to Morrison in his proffers, but then it turns out at trial that Morrison received less, according to the government. Is your argument that they had this witness for whom you're saying there were credibility issues? And what convinced the jury was hearing that there had been an associate search to which they didn't hear the results. That's what turned it around. Well, they didn't hear the result. They didn't need to hear the results. I can't agree with that. I mean, an associate search might yield nothing, might yield somebody, but someone who was not convicted of anything, it could yield any number of results. And they didn't hear what it was. And the point I'm asking you is, with that ambiguity, you're saying that's the factor that made them credit an otherwise problematic witness? Because it dropped propensity, yes, Your Honor, because it dropped propensity evidence telling the jury that they were arrested before and it suggested to the jury, the jury would pick up. But it didn't tell them that anybody had been arrested. I'm having a problem with that. Associate searches can yield links between people who've been suspected of all kinds of crimes but never been arrested. It clearly led the jury to think that there was a criminal association. Why else mention it at this point in the trial when the government is trying to make the case? You do argue about it not being struck, but the defense did not ask for it to be struck. That's true. The defense did not ask for it to be struck. And it did not ask for an instruction, though you fault the district courts for not doing that either. Well, I mean, I mean, there's, you're now urging us to say the conclusion was so obvious, but counsel on the ground did not think it needed a strike, did not think it needed an instruction. Am I right? Counsel did not ask for an instruction or move to strike. At that moment in the trial, again, this is this pivot moment. Morrison faced real personal danger during the robbery. There were firearms brandished at him during a robbery that originally the police thought he was not participating in. When the, this moment came up in the trial, jury heard twice about an associate search, and then the defense counsel had to make a decision about whether to prolong the focus on the associate search by asking for a lengthy instruction. And I wasn't trying to strike. Yep. I wasn't that ladies and gentlemen. That's, that's, that's not a lengthy instruction. All right. I understand you. Thank you. Good morning. May it please the court. My name is Vincent Cipini. I'm an assistant United States attorney in the Eastern district of New York. The opponents argument today, I was not your honor. Okay. Can you tell us what part of judge Donnelly's instruction, not to the government before trial, not to go into the associate search, um, wasn't clear such that the government went ahead and did it anyway? Your honor, I don't believe that the governance, that the prosecutor's question at the trial was intended to, or would have reasonably elicited the statement from the witness. It's important to the witness who was defiant because presumably he was prepared not to go into that area. Your honor, I don't know if the witness was defiant or perhaps just made a mistake. I think it's the context of the witness is important here. The witness was not a, uh, was not the case agent. The witness was a detective who specialized in identifying vehicles. He was testifying to identify the vehicle that was used as the getaway car. Uh, and the question that, uh, to which the response was the first mention of the associate search, it's at government appendix 584. The prosecutor asked, he's just for context, he's just shown him four images of the vehicle that he's identifying. And he says, after you notice these qualities about the vehicle, what did you do next with respect to your investigation? And what answer did the prosecutor expect? Well, the first part of the answer I believe is the, is the answer to the question. So it was basically determined that the vehicle was possibly a 94 to 98 Mercedes Benz S class. And then without a further question, the witness continues stating from there, I conducted an associate search for Latke and Morrison, who, and then the testimony is cut off. So it's to sort of a compound answer by the witness that went beyond the scope of the question that the prosecutor had asked. The prosecutor's question was limited to asking him about the vehicle for a detective who was specialized in identifying vehicles and was testifying about images of a vehicle that he had identified. And then the second instance in which the witness mentioned the, uh, associate search was after a question from Judge Donnelly from the district court, not actually from a question of the prosecutor. Following the sidebar, the prosecutor, as he had told the court he would at the sidebar, he led the witness through the relevant points, just established that the two had a connection, but that they were close friends without any mention of a prior arrest. He'd sort of basically wrapped that up. The district court asked a clarifying question, which unfortunately set the witness back. And he mentioned the associate search having been conducted again. Once more, he didn't even finish his sentence before the district court stopped him and the testimony continued. The results of the search were never discussed. But why else would they be using the word associate search? Well, Your Honor, I think that the term associate search could come up with any number of non-criminal associations between individuals. Two individuals could have filed a noise complaint together. They could have filed a lost property complaint together. They could have been in a traffic accident together. They could be linked through a car registration. But, like, we're talking about what a jury is supposed to be thinking when they hear an associate search, especially when the witness brings it up twice. What could they reasonably have thought other than they were criminal associates? Well, Your Honor, in addition to those examples, I think it's actually helpful to look at the testimony that the jury heard immediately after the mentions of the associate search, where they heard three different ways law enforcement connected people together, all of which are non-criminal. On page of Government Appendix 587, the question is asked, did you learn that LaMel Miller was a friend of LaFayette Morrison? Yes. First showing a non-criminal association that two individuals were friends together. The following page, Government Appendix 588, so did you learn that Michelle Miller was the brother of LaMel Miller? Answer, yes. Another non-criminal association between two individuals that the police uncovered, that two people were family members. Government Appendix 591, he's asking about a separate vehicle at this point, a Range Rover. The previous conversation was about a Mercedes. And he said, did there come, and this is the prosecutor, did there come a time when you were in searches for a Range Rover associated with LaMel Miller? Answer, yes. And then a few lines down, was that vehicle also separately ever associated with LaFayette Morrison? Answer, correct. So immediately after this associate search testimony, we see three different instances where the jury heard how two individuals were associated with each other. All of them are non-criminal, friends, family members, and through a vehicle. In two of those three instances, involved Miller and Morrison, the two men who were arrested together, Morrison being the appellant and Miller being his co-defendant at trial. And I also think for helpful context, the counsel to the appellant referred to what the district court understood the testimony to mean. And I actually think if you look at what the district court said at the sidebar, it's clear that the district court, after hearing exactly the same testimony that the jury heard, didn't understand there to be evidence of a prior arrest admitted. It is a Governor Appendix 585, to quote the same portion the defense counsel raised, the court said, I do not know if the witness is going to say, I am assuming he ran them and saw who he was arrested with before. The prosecutor said, correct. And just for the record, he didn't say that. And the court replied, yes, I know. And the obvious inference from that is the court is saying prospectively what it is concerned with the testimony would be if it were not stopped, which it was. The prosecutor emphasizes that the witness did not say that because the testimony was stopped. And then the court agrees with the prosecutor. And later at the bottom of that same page, Governor Appendix 585, the counsel for the appellant says, it's a huge problem, referring to the reference to the associate search. And the district court says on the following page, let's not go overboard. So I think that in this, and the district court had every incentive to be concerned about this. As counsel for the appellant mentions, the district court raised its concerns about the prior arrest and about the searches into their backgrounds at the pretrial conference. And the district court knew what the associate search would have shown. And despite knowing this and having concern about her order being followed, she still didn't hear the testimony in that manner. And also, I should say, in addition, that in any case, even if the testimony could not have impacted the outcome of the trial, in addition to the evidence that Your Honor outlined, I'd also mention the testimony of Zanelle Constantine, who was the girlfriend of the co-defendant, Mr. Miller. She testified that Mr. Miller had personally told her that the appellant was the inside man for the robbery. And also, there's a significant amount of post arrest evidence showing a consciousness of guilt that the appellant had lied repeatedly to police about not knowing the men who committed the robbery, even though both were acquainted to him, one of them for approximately 20 years. And he refused to identify him in a photo array. And he also remotely wiped his phone that police had recovered. And additionally, that he was associating, after the arrest, both in person and with some friendly text messages with his co-defendant, Mr. Miller, who had committed the robbery. So must the court have any other questions? I rest on the arguments in our papers. And we submit that the appellant's should be affirmed. Just to address one issue, Your Honors. Going to the page in the transcript that my friend was just citing, the clear implication of the court's question and the the arrest associate status. Despite the court's pre-trial ruling, she says, I do not know if the witness is going to say, I'm assuming he ran them and saw who he was arrested with before him. The prosecutor says yes. And then says, well, but he didn't say that. Meaning he didn't say that yet. The court proposed a way to sanitize it. And the witness went right back to it again. And this is actually consistent with something that the other prosecutor who tried the case with Mr. Gagliotti, who was the person who was engaging with this witness. This is on page 57 of our appendix. After the judge says, the associate search is out. It's not going to happen at trial. The prosecutor says, I did want to note, this is on page 57, I did want to note the fact that they are arrest associates is something that will likely come up naturally with the testimony. And the court says, I'm sorry that they, and the prosecutor says, the fact that they are arrest associates. And the court says in the following page, but why would that come in? You're not going to put that into evidence. So the fact of the arrest associate search being run, that it wasn't just a friendly association, as the prosecutor pointed out, there were, there was other proof of association. That's why this wasn't, that's part of why this wasn't an appropriate piece of evidence under 404B, because there was no dispute that the two men had an association. The only issue was whether it was a criminal association or an innocent association. And we see this, you know, going to the question of harmless error. We see this on this table a lot, where the government, you know, fights like the devil to get a piece of evidence in. Told twice at the conference not to do it. Objections. Are you implying that the fellow that tried the case did this intentionally? No, I'm saying the witness wasn't prepared. Why did the witness twice go to the associate search when the judge said twice at the pretrial conference, keep it out? I don't, I'm not allotting blame. I'm not in the preparation process. Well, you just said, you said we see this repeatedly with the government when they lose. And I was just wondering if you're taking a position with regard to a particular prosecutor. No. What I'm saying that we see repeatedly is the harmless error argument used after the government fights very hard to try to get a piece of evidence in. It doesn't, it doesn't work. It doesn't come in or it comes in, but it's subject to objections like here. And there's an entire controversy in front of the jury over this. And then we hear that it's harmless error on appeal. This should never have been before the jury. The judge made that perfectly clear. And I think through, you know, the witness did not seem to be prepared to stay away from this issue. Went back to it twice. It's not a personal criticism of the prosecutors. I don't know them. I didn't try the case. But just reading from the transcript, the witness did not seem to remember that they were supposed to avoid the associate search. And that caused prejudice to our client in a case that was heavily dependent on a very damaged cooperating witness and cell site information that was less scientific than the government made it seem. Thank you. Thank you, Counselors. This was very helpfully argued. And Mr. Shanker, I would like to thank you and your firm for the contributions that you make to Thank you very much. We have one more.